**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JEREMY WAYNE DUNLAP,           )<br>                                                        )<br>                        **Plaintiff,**      )<br>                                                        )      **CIVIL ACTION**<br>v.                                                     )<br>                                                        )      No. 14-1240-JWL<br>CAROLYN W. COLVIN,             )<br>**Acting Commissioner of Social Security,**  )<br>                                                        )<br>                        **Defendant.**     )<br>_____  ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for DIB and SSI, alleging disability beginning March 4, 2010.  (R. 21, 422, 436).  He exhausted proceedings before the Commissioner, and now seeks judicial review of the decision denying benefits.  Plaintiff argues that the Administrative

Law Judge (ALJ) erred:  in determining that Plaintiff's condition does not meet or equal Listing 1.02A of the Listing of Impairments; in according "little weight" to the opinion of his treating physician, Dr. Bruner; and in failing to assess limitations in his residual functional capacity (RFC) resulting from non-severe right carpal tunnel syndrome.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers each alleged error, but finds no error in the Commissioner's decision. Because Plaintiff relies on Dr. Bruner's opinion in his argument that Listing 1.02 is met or equaled (Pl. Br. 12, 13, 15) (citing R. 665, 669), the court begins with consideration of the ALJ's evaluation of Dr. Bruner's opinion.

## II.     Evaluation of Dr. Bruner's Treating Source Opinion

Plaintiff claims the ALJ erred in evaluating Dr. Bruner's medical opinion. He claims the opinion should have been given controlling weight. He argues that the three reasons given by the ALJ to discount Dr. Bruner's medical opinion are not specific, legitimate reasons sufficient to justify discounting the treating source opinion, and that even if they justify the failure to accord controlling weight, they are insufficient to justify according only "little weight" to the opinion. The Commissioner argues that the ALJ properly declined to afford controlling weight to Dr. Bruner's opinion because it was inconsistent with Dr. Bruner's treatment notes. She argues that the reasons given to discount Dr. Bruner's opinion are supported by the record evidence. The court agrees with the Commissioner.

### A.     Standard for Evaluating a Treating Source Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial record evidence.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating source opinion is not given controlling weight, the ALJ must specify what lesser weight she assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give reasons in her decision for the weight she ultimately assigns the opinion. If she rejects the opinion completely, she must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

### B.   The ALJ's Findings

As Plaintiff recognizes, the ALJ did not give controlling weight to Dr. Bruner's medical opinion, but stated that she accorded it only "little weight." (R. 31). She provided three reasons for doing so. First, she found that the opinion is not supported by the medical evidence or the doctor's treatment notes. Id. She found that Dr. Bruner did not provide rationale or evidence to support his sitting, standing, or walking restrictions, and finally, she noted that Dr. Bruner provided a disability opinion which is reserved to the Commissioner. Id.

### C.   Analysis

Plaintiff asserts that the ALJ's enumeration of Plaintiff's daily activities in reason number one is inconsistent with Plaintiff's testimony and written statements, and with the medical evidence of record. With regard to Plaintiff's allegations of limitations in daily activities resulting from his impairments, the ALJ provided a thorough credibility analysis in her decision (R. 27-30), and found that Plaintiff's allegations "are not entirely credible." (R. 30). Although Plaintiff is correct that the ALJ's findings regarding daily activities are inconsistent with Plaintiff's allegations, the ALJ discounted the credibility

6

of Plaintiff's allegations, and Plaintiff does not even make an argument that the ALJ's credibility determination is erroneous.  Plaintiff has shown no error in this regard.

Moreover, although Plaintiff asserts that the ALJ's findings regarding daily activities are inconsistent with the record medical evidence, he does not cite to or name a single, specific inconsistency in that evidence.  The ALJ discussed the record evidence and the medical records in the decision, and the court agrees with her that Dr. Bruner's opinion is not supported by the medical evidence or by Dr. Bruner's treatment notes.  As but one glaring example of this lack of support, in almost every treatment note after Plaintiff's alleged onset date, Dr. Bruner stated Plaintiff's weight bearing status is full. (R. 639, 651, 809, 812, 824).

Plaintiff also asserts that the ALJ's second reason was wrong to say that Dr. Bruner provided "no rationale or evidence to support the sitting, standing, walking restrictions."  (R. 31).  Dr. Bruner's medical source statement had a space for the doctor to "[i]dentify the particular medical or clinical findings . . . which support your assessment or any limitations and why the findings support the assessment."  (R. 665). As Plaintiff argues, Dr. Bruner inserted a "rationale" in that space – "Severe arthritis of the knee" - "xrays reveal severe arthritis."  Id.  However, as the ALJ found, this "rationale" does not support the sitting, standing, and walking restrictions of Dr. Bruner. The mere presence of severe arthritis does not justify limitations to sit 2 hours in a day, stand 1 hour in a day, or walk 2 hours in a day.  Moreover, despite the instructions on the

form, Dr. Bruner did not explain why the findings of severe arthritis support the limitations assessed.

As to the final reason given by the ALJ--that "Dr. Bruner gives an opinion on disability which is reserved to the Commissioner" (R. 31)--Plaintiff argues that "Dr. Bruner did not offer an opinion on whether Mr. Dunlap is disabled, he only indicated that Mr. Dunlap was unable to work eight hours per day." (Pl. Br. 17) (citing R. 665). The court finds that, in context, Dr. Bruner's statement is a "statement that [Plaintiff is] disabled" within the meaning of the regulations, and as such, is an opinion on an issue reserved to the Commissioner and may be given no special significance. 20 C.F.R. §§ 404.1527(e), 416.927(e). On his medical source statement, Dr. Bruner checked blocks indicating his opinion that in an eight-hour workday Plaintiff would be able to sit 2 hours, stand 1 hour, and walk two hours. (R. 665). Immediately thereafter, the form asks, "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" Id. It was in response to that inquiry that Dr. Bruner responded, "He will not be able to work 8 hours in a day." Id. This statement is not an opinion on Plaintiff's sitting, standing, walking, or any other functional limitations, those limitations appear elsewhere in the medical source statement. This is a statement of the doctor's opinion regarding disability. The ALJ is correct to discount Dr. Bruner's opinion, in part, because he gave an opinion on disability.

Having failed to show error in the ALJ's reasons for discounting Dr. Bruner's opinion, Plaintiff next argues that the "other" regulatory factors suggest that greater

weight should be accorded to Dr. Bruner's opinion. (Pl. Br. 18). This is simply an invitation to the court to reweigh Dr. Bruner's opinion and to substitute its judgment regarding that opiunion for that of the ALJ. As noted above, the court may not do so. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. The ALJ applied the correct legal standard to evaluate Dr. Bruner's opinion and substantial record evidence supports her findings in that regard. The court finds no error.

### III.    Listing 1.02A, Major Dysfunction of a Joint

Plaintiff claims that his condition meets or equals Listing 1.02A because he has been diagnosed with end stage osteoarthritis in his left knee, he has been recommended for a total knee replacement, and he is unable to ambulate effectively as defined in the Musculoskeletal System Listings. He points out that the ALJ found that Plaintiff "does not have an 'extreme' limitation in the ability to ambulate effectively" (R. 26), and argues that in making this finding she applied a more demanding standard than the Listing contains. He argues that his testimony and written statements indicate he is unable to ambulate effectively and that the ALJ did not discuss Plaintiff's own description of his ambulation. He argues that the ALJ did not recognize that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone," and that she determined that Plaintiff's obesity was not disabling merely because it did not affect Plaintiff's cardiac or pulmonary function, without realizing that obesity magnifies Plaintiff's pain and other limitations resulting from arthritis. (Pl. Br. 13) (quoting Social Security Ruling (SSR) 02-1p, 2000 WL

628049, at *6). Finally, Plaintiff argues that the ALJ isolated facts that support her decision while ignoring facts which detract from the decision.

The Commissioner argues that even if Plaintiff's condition is assumed to meet the other requirements of Listing 1.02A, the evidence does not establish inability to ambulate effectively. She points out that "inability to ambulate effectively" requires an "extreme limitation of the ability to walk," and argues that Plaintiff's contention that the ALJ erred in requiring an extreme limitation is without merit. (Comm'r Br. 10) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1)).

### A. Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2013); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a Listed impairment, his impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987). However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the Listing. Zebley, 493 U.S. at 530.

10

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### **B.     Analysis**

As the parties agree, Listing 1.02A is met or equalled in this case only if, among other criteria, the claimant's impairment(s) result in an "inability to ambulate effectively." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02A. Here, the ALJ determined that the criteria of Listing 1.02A are not met or equaled because the evidence does not show an "inability to ambulate effectively." "Inability to ambulate effectively means an <u>extreme</u> limitation of the ability to walk." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (emphasis added). "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." <u>Id.</u>, § 1.00(B)(2)(b)(2). And, they must be able to travel to and from a place of employment without companion assistance. <u>Id.</u>

Plaintiff argues that his testimony and written statements show he is unable to ambulate effectively, and that the ALJ erroneously ignored his testimony and statements. As noted above, the ALJ found that Plaintiff's allegations are not entirely credible, and Plaintiff makes no argument of error in that regard. Plaintiff shows no error in the ALJ's rejection of his testimony and statements regarding an inability to ambulate effectively.

Plaintiff also argues that Dr. Bruner's opinion supports a finding that he is unable to ambulate effectively as defined in the regulations. But, as the court found above, the ALJ properly discounted Dr. Bruner's opinion and, consequently, the failure to rely on that opinion to show an inability to ambulate effectively is not error.

Next, Plaintiff argues that the ALJ applied the incorrect legal standard when she stated that in order to meet or equal Listing 1.02A Plaintiff must have an "extreme" limitation in the ability to ambulate effectively. The court finds no error. While it is true that Listing 1.02A does not use words requiring an "extreme" limitation in the ability to ambulate effectively, the Listing does require a major dysfunction of a major peripheral weight-bearing joint "resulting in inability to ambulate effectively as defined in 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.02A (emphasis added). It strikes the court that the inability to ambulate effectively is in itself an extreme limitation. And, as quoted above, the regulations specifically explain--in these words--that "[i]nability to ambulate effectively means an extreme limitation in the ability to walk." Id. § 1.00(B)(2)(b)(1) (emphases added). The court finds no error in the ALJ's phrasing of the regulatory criterion. Moreover, Plaintiff has shown no extreme limitation in his ability to walk. As

the ALJ noted, Plaintiff clearly has knee pain, and has been recommended for a total knee replacement. (R. 30). However, the record also supports the ALJ's finding that Plaintiff's medications have been controlling his pain, and that he was "'working under the table' at an oil company doing general maintenance and labor activities, which included mowing." Id. This does not evince an extreme limitation in the ability to walk.

Finally, Plaintiff argues that the ALJ failed to evaluate properly the role of obesity in considering Plaintiff's impairments. Again, the court finds no error. Plaintiff quotes SSR 02-1p for the proposition that obesity can combine with other impairment to produce greater limitations than either would produce alone, and that obesity when present along with arthritis in a weight-bearing joint may produce "more pain and limitation that might be expected from the arthritis alone." (Pl. Br. 13) (quoting 2000 WL 628049, at *6). He then argues that the ALJ did not indicate how she considered the magnifying effects of obesity in her decision. Plaintiff's argument turns the burden of proof in a Social Security case on its head. It is Plaintiff's burden to prove that he has impairments which preclude substantial gainful activity. It is not the ALJ's burden to prove that Plaintiff's impairments are not disabling. Plaintiff points to no record evidence demonstrating that his obesity in combination with his knee arthritis produces greater pain and limitations than assessed by the ALJ. In fact, in light of the evidence that Plaintiff was "'working under the table' at an oil company doing general maintenance and labor activities, which included mowing," the court sees no such evidence of aggravation. Plaintiff shows no error in the ALJ's determination that his impairments do not meet or equal Listing 1.02A.

13

**IV.     Consideration of Impairments in Combination**

In his final allegation of error, Plaintiff notes that the ALJ found that Plaintiff has the medically determinable impairment of right hand carpal tunnel syndrome which is not severe within the meaning of the Act, and argues that it was error for the ALJ to fail to include functional limitations resulting from Plaintiff's carpal tunnel syndrome.  The problem with this argument is that Plaintiff does not point to record evidence demonstrating functional limitations resulting from his carpal tunnel syndrome which were not adequately accounted for in the RFC assessed by the ALJ.  Plaintiff's argument implies that he is unable to perform work with his right hand for more than five minutes at a time, but Plaintiff does not point to any record evidence requiring such a limitation.  Plaintiff has not met his burden to show error in this regard.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 17th  day of June 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**